UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**CAROLINA YOUNG**,

        Plaintiff,

        v.

**WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY**,

        Defendant.

Case No. 18-cv-2874 (CRC)

---

**OPINION AND ORDER**

Plaintiff Carolina Young has sued Defendant Washington Metropolitan Area Transit Authority ("WMATA"), alleging retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. Young, proceeding *pro se*, filed her complaint in District of Columbia Superior Court. WMATA removed the case to federal court and moved to dismiss the complaint. Young has since obtained counsel to represent her and now seeks leave to amend her complaint. WMATA opposes that motion, contending that any amendment would be futile and unable to survive a renewed motion to dismiss. The Court disagrees. Because Young's proposed Amended Complaint adequately states a claim, the Court will permit her to file it.

**I.   Background**

Young alleges the following facts in her proposed Amended Complaint[1]: in April 2017, she joined Mott MacDonald, a global management and engineering firm, as a Contract

---

[1] Because WMATA's opposition rests on the futility of the proposed Amended Complaint in the face of a 12(b)(6) motion to dismiss, the Court treats these facts as true. See, e.g., Sissel v. U.S. Dep't of Health & Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014) (In considering a 12(b)(6) motion, the "court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor but is not required to accept the plaintiff's legal conclusions as correct." (citation omitted)).

Specialist.  Proposed Amended Complaint, ECF No. 9-2 ("Am. Compl.") ¶¶ 3, 9.  Mott MacDonald assigned her to work at WMATA.  Id. ¶ 3.  All her work was dedicated to WMATA and conducted on WMATA premises, using WMATA equipment.  Id. ¶ 11.  WMATA approved her leave, set her schedule, oversaw her timesheets, trained her, assigned her work, and supervised that work.  She had a WMATA supervisor and a Mott MacDonald supervisor.  Id. ¶¶ 11–12.

Young, who is Hispanic, id. ¶ 3, further alleges that a WMATA co-worker "cornered and blocked" her and said "that he was 'glad President Trump [was] letting the Hispanic people of Puerto Rico die,'" calling them "'nothing but vermin sucking up the government teat.'"  Id. ¶ 16.  The co-worker told her "that he was a 6'2" white man, and [could] do whatever he wanted."  Id.  He indicated his view that "the Neo-Nazi and White Supremacist[] incident that happened in Charlottesville, VA, was justifiable and praised President Trump's handling of the incident."  Id.  In January 2018, Young reported this incident and others she perceived as discriminatory to Mott MacDonald, which in turn reported them to WMATA.  Id. ¶ 18.  WMATA investigated her complaint and concluded that its anti-harassment policies had not been violated.  Id. ¶ 19.  During the investigation, WMATA shared details about Young's complaint with parties that Young says did not need to know about it, who then questioned her.  Id. ¶ 20.

In June 2018, Young was reassigned within WMATA as a "Contract Administrator" in the Procurement and Supplies Office under the supervision of Judy Ann Davis.  Id. ¶ 21.  At their first meeting, Davis was "hostile and confrontational."  Id. ¶ 22.  She said Young had a reputation for being "trouble" and that several employees had complained about Young's "defensiveness."  Id.  Young alleges that Davis's demeanor and comments stemmed from her complaints because Davis knew about them and there was no other basis for any negative

reputation.  Id. ¶¶ 22–24.  In mid-July, Young reported to both WMATA and Mott MacDonald that Davis was retaliating against her for her previous discrimination claims.  Id. ¶ 25.  She also met with an equal employment opportunity official from WMATA's Office of Civil Rights and filed an internal complaint.  Id. ¶ 28.

On August 1, WMATA terminated Young, and she was escorted out of the building.  Id. ¶ 29.  The same day, Mott MacDonald terminated her; she was told WMATA no longer needed her services and there were no other openings at Mott MacDonald.  Id. ¶ 30.  A WMATA employee told another Mott MacDonald employee who had been assigned to the same contract as Young to reapply for the position through the Sparks Group, a staffing agency.  Id. ¶ 31.  No one gave Young that information.  Id.  In October 2018, a recruiter from the Sparks Group contacted Young to inform her of a job opening at WMATA for a "Senior Contract Administrator" in the Procurement and Supplies Office, supporting Davis.  Id. ¶¶ 35–36.  According to Young, the position was nearly identical to the one she held prior to her termination.  Id. ¶ 35.  The Sparks Group submitted Young's resume to WMATA but never heard back.  Id. ¶ 37.

## II.   Legal Standard

Federal Rule of Civil Procedure 15(a) gives courts discretion whether to grant leave to amend a complaint.  Fed. Rule Civ. P. 15(a).  "Leave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failures to cure deficiencies, or futility."  Richardson v. United States, 193 F.3d 545, 548–49 (D.C. Cir. 1999).  A proposed amended complaint is futile if it would not survive a motion to dismiss.  When assessing whether a proposed amended complaint would survive a motion to dismiss, courts apply the same standards as they would to review such motion.  See In re

Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 215–16 (D.C. Cir. 2010) (citations omitted). The party opposing amendment bears the burden of showing why leave to file an amended pleading should not be granted. Smith v. Café Asia, 598 F. Supp. 2d 45, 48 (D.D.C. 2009).

**III.  Analysis**

Here, WMATA contends that Young's proposed amendment is futile because it fails to state a claim for relief and is thus susceptible to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Def.'s Opp'n to Mot. Leave to File Am. Compl. ("Opp'n"), at 1–2. WMATA identifies two perceived shortcomings in the proposed Amended Complaint: (1) a failure to engage in statutorily protected activity against which Title VII outlaws retaliation and (2) a failure to allege that WMATA was Young's employer. The Court will consider each point in turn.

A.   Retaliation Claims

WMATA contends Young's retaliation claim is not viable because she has not alleged that she engaged in statutorily protected activity. Opp'n at 2–8. "To prove unlawful retaliation, a plaintiff must show: (1) that [s]he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against [her]; and (3) that the employer took the action 'because' the employee opposed the practice." Harris v. District of Columbia Water & Sewer Auth., 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting McGrath v. Clinton, 666 F.3d 1377, 1379–80 (D.C. Cir. 2012)).

WMATA insists that Young's allegations do not suffice because the incidents she reported do not constitute discrimination in violation of Title VII. But its briefing focuses not on

Young's retaliation claim, but on a *discrimination* claim she does not make here.[2]  Whether or not the interactions Young reported would suffice to constitute discrimination under Title VII is not relevant here.  The D.C. Circuit has interpreted Title VII's anti-retaliation provision as "extending to a practice that the employee reasonably and in good faith *believed* was unlawful under the statute."  McGrath, 666 F.3d at 1380 (emphasis in original).  In other words, Young's "retaliation claim does not rise or fall on the success of her underlying, good-faith discrimination claim," Nurriddin v. Bolden, 818 F.3d 751, 757 n.5 (D.C. Cir. 2016), but rather depends on whether Young reasonably and honestly thought she was opposing illegal discrimination.  The facts she alleges here clear that bar: she reported an interaction in which a co-worker referred to Hispanic people as "vermin," celebrated their death, praised violent Neo-Nazi activism, and did so in a threatening way.  Am. Compl. ¶ 16.  Her belief that this constituted discriminatory harassment was certainly reasonable and there is no suggestion of bad faith.  That suffices for Title VII to protect her from retaliation.

   Similarly, Title VII's anti-retaliation provision covers Young's internal complaint about Davis.  WMATA seems to suggest that because that complaint against Davis did not allege discrimination, Young cannot claim illegal retaliatory behavior.  See Opp'n at 7.  Not so.  An employer may not retaliate against an employee who opposes retaliatory action under Title VII.  See, e.g., Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (considering whether plaintiff claiming retaliation for internal complaint had "allege[d] in [that complaint] that she was currently being discriminated against *or that she was being retaliated against* for her previous [protected activity]" (emphasis added)).  In other words, if an employee complains

---

[2] Young's original *pro se* Complaint included this claim, see ECF No. 1-2, at 6–7, but her proposed Amended Complaint does not, see Mot. Leave to File Am. Compl. at 2.

about discrimination, then faces retaliatory activity, she may oppose that activity without being subject to a *second* retaliation for opposing the *first* retaliation. And, again, a claim based on the *second* retaliatory activity does not rise or fall on whether the *first* retaliatory activity could form the basis of its own claim. Thus, WMATA misplaces its emphasis on whether Davis's comments were sufficiently materially adverse to sustain a standalone retaliation claim. See Opp'n at 7–8.

Rather, the question is whether Young reasonably and in good faith believed that Title VII protected her internal complaint about Davis's behavior. Here, again, Young has alleged sufficient facts to establish a reasonable and good faith belief that her complaint about Davis's purported retaliation was itself protected activity. She alleges that when she complained initially of the perceived discrimination, WMATA told her that no one could retaliate against her. Am. Compl. ¶ 19. But, she alleges, her first meeting with her new supervisor was hostile and she was told she was "trouble," an assessment that Young alleges could not have been based on anything but her anti-discrimination complaints. Id. ¶ 22. Whether or not being deemed "trouble" and treated with hostility by a new supervisor would sustain its own retaliation claim, it was not unreasonable for Young to believe her activity was protected.

WMATA relies heavily on Battle v. Master Security Company, LLC, 298 F. Supp. 3d 250 (D.D.C. 2018), in which the undersigned dismissed a complaint for failure to state a claim of retaliation. That reliance is misplaced. In Battle, the plaintiff alleged retaliation for raising concerns about a litany of workplace conditions. He relied on two statements in which he raised these concerns, neither of which "reference[d] any discrimination that would be unlawful under Title VII." Id. at 253. That fact was the basis of the Court's conclusion that Mr. Battle "ha[d] not pointed to any protected activity that may have served as the basis for his termination." Id.

Contrary to WMATA's suggestion, see Opp'n at 4–5, the Court did not dismiss Battle's retaliation claim because he would have been unable to sustain a discrimination claim on its own. Rather, Battle had not alleged facts to reflect opposition to practices reasonably viewed as discriminatory. Young does, so her proposed Amended Complaint is not futile on that basis.

### B.   Joint Employment

WMATA next insists that the proposed Amended Complaint would be futile because it was not Young's employer. Title VII prohibits "employers" from retaliating against their employees. 42 U.S.C. §§ 2000e, 2000e–2, 2000e–3. Young alleges that WMATA was her joint employer alongside Mott MacDonald.

The D.C. Circuit has applied two distinct tests to determine whether an entity qualifies as a joint employer for the purposes of Title VII. Under the so-called Browning–Ferris test, courts look to whether "two or more employers exert significant control over the same employee." NLRB v. Browning–Ferris Indus. of Pa. Inc., 691 F.2d 1117, 1123 (3d Cir. 1982); see Redd v. Summers, 232 F.3d 933, 938 (D.C. Cir. 2000) (referring to Browning-Ferris test as a "fairly standard formulation" of the joint-employment test). The second test, known as the Spirides test, includes twelve separate factors, the most important of which considers a purported joint employer's right to control the "means and manner" of the employee's performance. Spirides v. Reinhardt, 613 F.2d 826, 831 (D.C. Cir. 1979). Despite their distinct framing, the two tests share a central question: looking at all the facts and circumstances of employment, did "the purported . . . 'joint employer' exercise[] control over the worker's performance and the terms and conditions of his or her engagement[?]" Clayton v. District of Columbia, 117 F. Supp. 3d 68, 79 (D.D.C. 2015).

Here, Young's proposed Amended Complaint plausibly alleges joint employer status. She has alleged that WMATA exercised authority by: setting her schedule and approving her timesheets and any leave requests, training her, assigning the work she did, and supervising that work. Am. Compl. ¶¶ 11–12. Further, she alleges that her work was exclusive to WMATA. Id. ¶ 11. Finally, her complaint alleges that WMATA fired her, which gives rise to the inference that it had authority to do so. Id. ¶ 29. These allegations, if true, indicate a high level of control over Young's employment. They parallel facts that have been found sufficient by other courts in this District at the motion to dismiss stage. See, e.g., Clayton v. District of Columbia, 999 F. Supp. 2d 178, 184 (D.D.C. 2013) (joint employment plausibly alleged where complaint indicates defendant had "supervisory authority" and plaintiff reported to both purported employers); Brown v. Corr. Corp. of Am., 603 F. Supp. 2d 73, 79 (D.D.C. 2009) (joint employment plausibly alleged where complaint indicates defendant was involved in the "training, supervision and discipline of employees").

Critically, WMATA's futility arguments rest largely on a declaration submitted by Mott MacDonald's Director of Human Resources, which WMATA contends casts doubt on Young's allegations. See Opp'n at 8. But, in assessing whether the proposed Amended Complaint states a claim, the Court must accept all of Young's factual allegations as true.[3] See, e.g., Sissel, 760 F.3d at 4. Joint employment "is essentially a factual issue," Nytes v. Trustify, Inc., 297 F. Supp.

---

[3] Moreover, while WMATA suggests that the Court may consider the declaration because it is not limited to the allegations of the complaint when considering a 12(b)(1) motion to dismiss for lack of *jurisdiction*, that is not the case for a 12(b)(6) motion to dismiss for failure to state a claim. WMATA's futility argument turns on 12(b)(6) standards. See, e.g., Opp'n at 1 ("Plaintiff cannot plausibly state a claim[.]); id. at 2 (invoking 12(b)(6) standards).

3d 191, 204 (D.D.C. 2018), that ordinarily "is plainly inappropriate to resolve on a motion to dismiss pursuant to Rule 12(b)(6)," Brown, 603 F. Supp. 2d at 79.

The only case on which WMATA relies where a Court granted a motion to dismiss based on insufficient allegations of joint employment is Mack v. Aspen of District of Columbia, Inc., 248 F. Supp. 3d 215 (D.D.C. 2017).[4] In Mack, the complaint alleged only that the plaintiff "reported to and [was] directly supervised" by an employee of the defendant. Id. at 219. This did not suffice because while it indicated "some supervision over [the plaintiff's] work," it showed little about the "scope of . . . authority over her." Id. Here, by contrast, Young's proposed Amended Complaint alleges numerous details about the scope of WMATA's authority over her work.

At the motion to dismiss stage, Young's proposed Amended Complaint is futile only if it fails to plausibly allege facts that would establish that WMATA was her joint employer. That is not the case here.

---

[4] In Mack, the court dismissed the case without prejudice because it was "not convinced that [the plaintiff would be] unable to plead other facts, consistent with the [original] Complaint, that would cure the deficiency and state a claim" of joint employment. 248 F. Supp. 3d at 220.

9

## IV.     Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [9] Plaintiff's Motion for Leave to File a First Amended Complaint is GRANTED.  It is further

**ORDERED** that [3] Defendant's Motion to Dismiss is DENIED as moot.

**SO ORDERED**.

_____<br>
CHRISTOPHER R. COOPER<br>
United States District Judge

Date:  April 4, 2019